# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROYAL INDEMNITY COMPANY and ROYAL INSURANCE COMPANY OF AMERICA,<br>      Plaintiffs,<br><br>      v.<br><br>PENDLETON KING, DAPHNE KING, PENDLETON KING, JR., and CONOR McENTEE,<br>      Defendants,<br>      Third-Party Plaintiffs,<br><br>      v.<br><br>NATIONAL SURETY CORPORATION and NEW ENGLAND BROKERAGE CORPORATION,<br>      Third-Party Defendants. | CIVIL ACTION NO.<br>3:03cv2178 (SRU) |

## RULING ON MOTION TO RECONSIDER

At a recent conference with the parties, I held that, in light of the summary judgment ruling in this case, the claims remaining in the case were not viable and that judgment would enter on all claims. Defendants/third-party plaintiffs now move to reconsider that ruling. For reasons set forth below, their motion is denied.

## I.     Background

This dispute arose out of a serious accident involving an all-terrain vehicle ("ATV") owned by Pendleton and Daphne King and operated by Pendleton King, Jr. The accident caused Conor McEntee to suffer a life-threatening head injury. McEntee sued the Kings in state court for damages arising from the accident, and the Kings' insurers, Royal Indemnity Company ("RIC") and Royal Insurance Company of America ("RICA") (collectively "Royal"), then filed a

declaratory judgment action in this court seeking an order that Royal had no duty to defend or indemnify the Kings in their state court action. The Kings brought several counterclaims against Royal and filed a third-party complaint against third-party defendants National Surety Corporation ("National") and New England Brokerage Corporation ("NEBC"). NEBC then filed several crossclaims against Royal for indemnification and contribution.[1] Through the course of the litigation, several of the claims were dismissed. All parties then moved for summary judgment,[2] and on September 28, 2007, I granted summary judgment against the Kings on most of the remaining claims. *See Royal Indemnity Co. v. King*, 512 F. Supp. 2d 117, 133 (D. Conn. 2007) ("*Royal I*"). That ruling, with which I assume familiarity, is central to the issues presented here.

A few specific factual findings and legal holdings from *Royal I* are particularly relevant to the instant motion for reconsideration. At summary judgment, the Kings argued that RIC had a duty to defend and indemnify them under their homeowner's policy. RIC countered that it had no duty to defend or indemnify the Kings because, in part, the accident did not occur on an "insured location" as the Kings' policy defined that term.[3] The policy defined "insured location" as "either (a) the residence premises; (b) the part of other premises, other structures and grounds

---

[1] NEBC's crossclaims against Royal for indemnification and contribution are hereby dismissed without prejudice as moot.

[2] The parties filed five summary judgment motions in total.

[3] The record at summary judgment was voluminous. It included, among other evidence, an extensive report of the accident written by Chuck Ardito, an insurance adjuster that Royal hired to investigate the accident, a six-page letter from Royal to the Kings explaining the denial of coverage, and another letter from Royal's counsel further explaining the denial of coverage. *See* King's 56(A)(1) Statement doc. #146.

used by you as a residence; or (c) any premises used by you in connection with a premises in 8.a or 8.b above." *Royal I*, 512 F. Supp. 2d at 124 (internal quotations omitted). The central issue was thus whether the Kings "used" the portion of Midwood Road upon which the accident occurred "in connection with" their residence premises.

Virtually all facts relevant to that issue were undisputed. The Kings conceded that the accident occurred on a portion of Midwood Road that the they did not actually use to gain access to their residence. Instead, they argued that because Deer Park Association was a private homeowners association, and because they had the legal right to use that portion of the road, they satisfied the "use in connection" clause. Thus, at summary judgment only a discrete interpretive issue remained, namely, whether the contractual term "use in connection" requires an insured to actually use a premises, or whether that clause is satisfied if the insured simply has some legal right to use a premises. Citing several cases that interpreted identical contractual clauses, I rejected the Kings' argument, holding that "[t]he legal right to use property may (or may not) be probative, but it is certainly not dispositive of whether parties actually use a piece of property 'in connection with' their residence premises." *Royal I*, 512 F. Supp. 2d at 127. I also concluded that:

> actual use is a prerequisite to satisfying a homeowner's policy clause that requires use of piece of property in connection with a residence premises. In this case, the inquiry ends here; I need not engage in a fact-intensive inquiry because the Kings do not contend, nor have they presented any evidence, that they actually used the portion of North Midwood Road upon which the accident took place. As such, the subject accident, although it occurred close to an insured location – fifty to seventy-five feet away – did not occur on an insured location. The Kings' homeowner's policy therefore does not provide coverage with respect to McEntee's claims.

*Id*.

The Kings also argued at summary judgment that RICA had a duty to defend and indemnify them under their umbrella policy. Again, no factual issues were in dispute and the motion presented two purely interpretive issues: (1) whether the Kings' umbrella policy covered the subject ATV even though it was not listed on the declarations page of the policy; and (2) whether RICA effected a valid change to the policy to require listing of the ATV and payment of an additional premium for coverage to apply. I held for RICA on both questions. First, the policy's express terms specifically excluded "coverage for motor vehicles unless they are 'described as being covered in the declarations,'" *id*. at 128, and the subject ATV was not listed on the declarations page of the policy. *Id*. The second issue was slightly more complex. The Kings cited an interpretive bulletin that the State of Connecticut Insurance Department issued May 5, 2004, four years after RICA effected the subject change to the Kings' policy.[4] *Id*. at 128.

---

[4] The bulletin clarified the requirements of Conn. Gen. Stat. § 38a-323 concerning changes in coverage, and provided that:

> If an insurer intends to continue to insure a risk, either commercial or personal, but under terms or conditions less favorable than previously provided, the insurer must notify the insured by either sending a notice of nonrenewal or conditional renewal notice. The conditional renewal notice must clearly state or be accompanied by a clear statement that identifies terms or conditions that may be less favorable to the insured under the ensuing policy. Any significant reduction of coverage requires either a notice of nonrenewal or a conditional renewal notice. Some examples where conditional renewal notices are appropriate are: An increase in the policy's deductible or retention. A decrease in the limits of coverage. A new exclusion or deletion of coverage. The conditional renewal notice must comply with the advance number of days required by statute for nonrenewal of the particular type of policy. The conditional renewal notice must be sent by registered or certified mail or by mail evidenced by a United States Post Office certificate of mailing, or delivered by the insurer to the insured by the required date.

*Royal I*, 512 F. Supp. 2d at 128.

The Kings argued that the interpretive bulletin had retroactive effect and required RICA to send a conditional nonrenewal notice when it, in effect, renewed the Kings' policy with the additional requirements. I rejected the Kings' argument and declined to give the bulletin retroactive effect, and I also held that the Kings failed to support their assertion that the previous policy would have covered the subject accident.

In addition to their claims against Royal, I also addressed the Kings' negligence claim against NEBC. The Kings had alleged that NEBC was negligent in failing to procure an umbrella policy that failed to follow form to the Kings' homeowner's policy. I held, however, that the Kings' negligence claim "hinges on its previous argument that the homeowner's policy covers McEntee's claimed damages," but that "coverage for McEntee's claims did not exist under the Kings' homeowner's policy." *Id*. at 133. Consequently, "the Kings' umbrella policy would not have covered McEntee's claimed damages even if it had followed form to the Kings' homeowner's policy. As such, even assuming the truth of the Kings' allegations regarding NEBC's acts, the Kings cannot prove the acts caused them any damages." *Id*. at 133.

Finally, I granted declaratory relief to Royal, directing that "neither RIC, nor RICA, have a duty to defend or indemnify the Kings in connection with any claims arising out of injuries that Conor McEntee sustained in the May 5, 2002 accident." *Id*. at 133.

Royal, however, did not move for summary judgment on all claims and a few remained pending after *Royal I*.[5] Specifically, Royal did not move for summary judgment on the Kings'

---

[5] In *Royal I* I noted that "RIC and RICA have not moved for summary judgment on the Kings' counterclaims under CUTPA, and for breach of contract and breach of the covenant of good faith and fair dealing. RIC and RICA have also not moved for summary judgment on NEBC's indemnification and contribution claims. NEBC has not moved for summary judgment on the Kings' third-party claims seeking declaratory relief, and alleging breach of contract and

CUTPA/CUIPA and bad faith claims. Although those claims remained pending, when ruling on summary judgment, I observed that those claims appear to be "either: (a) moot; (b) hinge upon an interpretation of the Kings' insurance policies explicitly rejected herein; or (c) otherwise inconsistent with my ruling today." *Id.* at 134. I directed that "[t]he parties shall report to chambers within 20 days of [the summary judgment] ruling whether they intend to pursue any of their remaining claims."[6] *Id.*

---

breach of fiduciary duty." 512 F. Supp. 2d at 133.

A complete accounting of the Kings' claims against all parties is in order. The Kings filed amended counterclaims against Royal alleging breach of contract (Count I), violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") (Count II), and breach of the implied covenant of good faith and fair dealing ("bad faith claim") (Count III).

The Kings filed a third-party complaint against National and NEBC. In Count I the Kings sought declaratory judgment that "the National Policy covers the McEntee's claims arising out of the May 5, 2002 accident." In Count II the Kings alleged that National breached its insurance contract with the Kings. In Count III the Kings alleged breach of contract against NEBC. In Count IV, the Kings allege that NEBC was negligent in writing the umbrella policy to exclude ATV coverage. In Count V the Kings alleged that NEBC breached its fiduciary duty to the Kings.

With respect to the Kings' amended counterclaims against Royal, I granted summary judgment to Royal on the Kings' breach of contract claim in Count I, *see Royal I*. Royal did not move for summary judgment on Counts II (CUTPA/CUIPA) and III (bad faith), so those claims remained pending until the October 31 telephone conference.

With respect to the Kings' third-party claims against NEBC, I dismissed the Kings' breach of contract claim (Count III) and breach of fiduciary duty claim (Count V) without prejudice. *See* Docs. ## 56, 57. The Kings chose not to replead those claims. In addition, I granted summary judgment to NEBC on Count IV (negligence) in *Royal I*.

With respect to the Kings' third-party claims against National, I granted summary judgment, in *Royal I*, to National on the Kings' claim for declaratory relief (Count I) and its claim for breach of contract (Count II).

[6] The Kings argued in their motion for reconsideration that "[d]uring the October 31, 2007 telephonic conference, the Court summarily dismissed all of the Kings' remaining claims against RIC, RICA and NEBC." Def. Motion at ¶ 8. The Kings also asserted, at the phone conference, that they objected "to the fact that [the court] decided the fate of two of the three of the Kings' claims without notice to counsel that those issues would be decided in this conference." Tr. of the October 31, 2007 Telephone Conference at 31-32.

The parties then participated in a telephone conference on October 31, 2007 to discuss whether any viable claims remained pending in the case. The Kings argued that their CUTPA/CUIPA and bad faith claims against Royal were still viable. The Kings also argued that they could pursue other theories of negligence against NEBC even though I granted summary judgment to NEBC on the Kings' negligence claim as pleaded. I held at the conference the Kings' CUTPA/CUIPA and bad faith claims could not survive in light of the recent ruling. In addition, although I did not address it directly at the conference, my summary judgment ruling expressly disposed of the Kings' negligence claim, as pleaded, against NEBC. *See id* at 132-33. The negligence count was thus no longer pending after the summary judgment ruling, so, unlike the CUTPA/CUIPA and bad faith claims, no additional action was necessary to dispose of the negligence count at the subsequent conference. The Kings now move to reconsider the dismissal the remaining claims at the conference.[7]

## II.     Standard

Motions for reconsideration are committed to the sound discretion of the court. *Kregos v. Latest Line, Inc.*, 951 F. Supp. 24, 26 (D. Conn. 1996). The three appropriate grounds for justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks

---

After I issued *Royal I*, I set up a telephone conference and informed the parties to be prepared to discuss what, if any, claims remained in the case following the decision. All parties submitted documents that outlined their positions on which claims remained pending in light of *Royal I*. The Kings were given notice and an opportunity to be heard at that conference on the issues, and have had the opportunity to brief the issues in the instant motion.

[7] The Kings have not moved to reconsider the summary judgment ruling.

omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).

The procedural posture of the recent dismissal of the Kings' CUTPA/CUIPA and bad faith claims is somewhat unique. Neither party had moved for summary judgment on those claims. Instead, I entered judgment *sua sponte* for Royal and against NEBC on those claims based on the fact that those claims, as pled, could not survive in light of the facts found and legal issues decided at summary judgment. Accordingly, I have not applied the usual standard for motions for reconsideration, but instead have sought merely to determine whether any viable claims remained in the case following the summary judgment ruling.

## III. Discussion

### A. CUTPA/CUIPA Claims Against Royal

"Connecticut courts generally do not recognize a private cause of action under CUIPA;"[8] however, "violations of CUIPA may be alleged as a basis for a CUTPA claim." *Bepko v. St. Paul Fire & Marine Ins. Co.,* 2005 U.S. Dist. LEXIS 39066, *9 (D. Conn. 2005). A "plaintiff may not bring a cause of action under CUTPA based on conduct which does not also violate CUIPA where the alleged misconduct is related to the insurance industry." *O&G Indus. v. Travelers Prop. Cas. Corp.*, 2001 Conn. Super. LEXIS 2568 (Conn. Super. Ct. 2001) (citing *Mead v. Burns*, 199 Conn. 651, 663-66 (1986)). "Thus, 'just as CUTPA is dependent on CUIPA

---

[8] That proposition has been debated, but the debate is not relevant here because the Kings have alleged a CUIPA violation as a basis for their CUTPA claim.

for substantive content, CUIPA is dependent on CUTPA for enforcement by private parties.'"

*Bepko*, 2005 U.S. Dist LEXIS 39066, *10 (quoting 12 Robert Langer, John T. Morgan & David

L. Belt, Connecticut Practice Series, Unfair Trade Practices § 3.15 (2003)).[9]

CUTPA provides that "[n]o person shall engage in unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce."[10] Conn. Gen. Stat.

§ 42-110b(a). The statute provides a private cause of action to "any person who suffers any

_____

[9] The Kings alleged that Royal refuses to "defend or cover claims without conducting reasonable investigations" with sufficient frequency to "indicate a general business practice." Am. Counterclaims at ¶ 20. The Kings have not alleged any other incidents, other than the accident in question, that would support their legal conclusion that it is Royal's general business practice to improperly investigate claims. Some courts have dismissed CUIPA claims in light of that pleading defect, *see, e.g. Emmelmann v. Am. & Foreign Ins. Co.*, 2006 U.S. Dist. LEXIS 16286, *7-*8 (D. Conn. 2006) (holding that the mere allegation that the defendant failed to comply with CUIPA in that particular case "is not sufficient to support a conclusion that there was a general practice of treating insureds the way the plaintiffs were treated"), whereas other courts sometimes allow discovery on those issues, *see, e.g. Guillory v. Allstate Ins. Co.*, 476 F. Supp. 2d 171, 175-76 (D. Conn. 2007) (holding that "[a]lthough plaintiff has not pled any frequency with which the defendant engaged in the insurance practices he complains of, this is a proper area for discovery, particularly as such information may only be in defendant's possession, not plaintiff's.").
    Unlike this case, the courts in those cases considered whether the plaintiffs' complaints could survive a motion to dismiss by asserting a bare legal conclusion that an insurance company engaged in a prohibited general business practice. This case is readily distinguishable because it is in a different, and somewhat unique procedural posture. I am not deciding whether this case should proceed to discovery on the Kings' CUTPA/CUIPA claims. I am holding that, in light of the undisputed facts revealed and legal holdings made at summary judgment, the Kings's CUTPA/CUIPA claims can not survive.

[10] In a typical CUTPA claim, "[t]hree criteria are used in assessing whether a practice is unfair, although all three need not be proved: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, competitors or other businesspersons." *Guillory v. Allstate Ins. Co.*, 476 F. Supp. 2d 171, 175 (D. Conn. 2007) (internal quotations omitted). In this case, however, the CUIPA provisions would dictate what constitutes an "unfair" business practice in the insurance industry.

ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." Conn. Gen. Stat. § 42-110g(a). "[T]o prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam*, 240 Conn. 300, 306 (1997). "The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." *Id.*

The CUIPA statute defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Conn. Gen. Stat. § 38a-816. The Kings allege that Royal violated section 38a-816(6)(d), which defines as an "unfair" insurance practice "refusing to pay claims without conducting a reasonable investigation based upon all available information." *Id.* In addition to proving that Royal engaged in that unfair practice, the Kings are also required to show, under section 38a-816(6), that Royal was "committing or performing" that unfair act "with such frequency as to indicate a general business practice . . . ." *Id.* "In requiring proof that the insurer has engaged in unfair claim settlement practices with such frequency as to indicate a general business practice, the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994) (internal quotations omitted).

The Kings allege the following basis for their CUTPA/CUIPA claim:

3. On August 5, 2003 counsel for the defendant Conor McEntee notified the insurers that Mr. McEntee was injured while using the ATV owned by the insureds.

4. On September 9, 2003 representatives of the insurers interviewed Pendleton King and his son Pendleton King, Jr. regarding the May 5, 2002 accident. This was the only information requested from the insureds as part

of the insurers' investigation into the claim.

5. On November 24, 2003 the insurers advised the Kings that the referenced insurance policies do not provide coverage for the claims alleged by Conor McEntee. Royal denied coverage under the umbrella policy because it contains a specific exclusion for ATVs. The homeowner's policy contains no such exclusion, but coverage was denied under that policy as well because, Royal contends, the accident occurred off the insured premises.

6. The insurers' position regarding coverage is based, in substantial part, on its mistaken belief that the alleged injury to Conor McEntee occurred at a location other than a premises used in connection with the residence premises, as the terms "insured location" and "residence premises" are defined within the referenced insurance policies.

7. The location at which the alleged injury to Conor McEntee took place is a private way maintained by The Deer Park Association, Inc. for the exclusive use and benefit of all property owners within The Deer Park Association, including the insureds. As such, it was a location used by the insureds in connection with their residence.

8. A reasonable investigation into the facts and circumstances relating to the May 5, 2002 accident would have revealed the facts stated in ¶ 7 above.

9. The insurers failed to conduct a reasonable investigation into the May 5, 2002 accident, and denied coverage to – and refused to defend – the insureds on the basis of an unreasonable, inept and incomplete investigation.

10. On information and belief, the insurers' refusal to defend or cover claims without conducting a reasonable investigation based upon all available information has occurred with such frequency as to indicate a general business practice.

Am. Counterclaims at ¶¶ 6-10. The Kings have not alleged that Royal failed to properly

investigate the facts surrounding the accident. For example, they do not allege that Royal

gathered incorrect facts or failed to conduct a thorough or timely investigation of the facts;

indeed all of the relevant facts pertaining to insurance coverage, including the location of the

accident, are undisputed, and the record shows that any delay in the processing of their claims

was attributable to the Kings' failure to promptly inform Royal about the accident.  Instead, the sole basis for the Kings' assertion that Royal's investigation was unreasonable was that Royal's *decision* to deny coverage based on the undisputed facts was improper.

But at summary judgment I held, as a matter of law, that Royal's decision to deny coverage was justified because the accident did not occur on an "insured location" as the policy defined that term.  In light of the holding that Royal's decision to deny coverage was proper, the Kings' allegations fail to state a viable claim that Royal's investigation was otherwise "unreasonable" under Conn. Gen. Stat. § 38a-816(6)(d).

The Kings' allegations are deficient in at least one additional, and related respect.  The Kings reason that, if allowed to pursue discovery, they can establish that Royal "refus[es] to pay claims without conducting a reasonable investigation" with "such frequency as to indicate a general business practice."  Conn. Gen. Stat. § 38a-816(6)(d).  But "in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act" (in this case, failing to conduct a reasonable investigation), *and* that, "'as a result of' this act, the plaintiff suffered an injury.  The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff."  *Abrahams*, 240 Conn. at 306.  Thus, even if the Kings alleged that Royal was "committing or performing" acts giving rise to a CUIPA violation "with such frequency as to indicate a general business practice," in violation of section 38a-816(6), the Kings have not pled that Royal engaged in that "general business practice" in their case (again, other than the allegation that Royal's decision to deny coverage was improper).  In other words, the Kings fail to allege that they were proximately harmed by the improper investigative practices.

The Kings cite, and heavily rely upon, *United Technologies Corp. v. American Home Assur. Co.*, 118 F. Supp. 2d 181 (D. Conn. 2000), for the proposition that a procedural bad faith claim under CUTPA/CUIPA claim can survive even if there is no coverage under the policy. Indeed, the Connecticut Supreme Court in *Lees v. Middlesex Ins. Co.*, 219 Conn. 644, 653 (1991), held that:

> In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all of the terms of the policy. In a CUIPA and CUTPA claim, however, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claims settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. Furthermore, in an action "on the policy," the insurer's duty to comply with the policy provisions stems from the private insurance agreement and is contractual in nature. In a CUIPA and CUTPA claim, the insurer's duty stems not from the private insurance agreement but from a duty imposed by statute.

*Id.* at 653. I need not address today whether a plaintiff can state a valid CUTPA/CUIPA claim in the absence of coverage under the policy because, even if they can, the Kings have not pled one.

In sum, to allege a valid procedural bad faith claim under CUTPA/CUIPA, the Kings were required to include allegations (a) that Royal engaged in an unfair insurance practice as defined under CUIPA, and (b) that they were proximately harmed by the insurer's procedural bad faith.[11] Royal has pled neither.[12] The Kings' CUTPA/CUIPA claim thus fails.

---

[11] The Kings were also required to plead that Royal was "committing or performing" that unfair act "with such frequency as to indicate a general business practice . . . ." Conn. Gen. Stat. § 38a-816(6).

[12] That fact is further evident even in the Kings plea for damages, in which the Kings sought a judgment:

B.    Bad Faith Claim Against Royal

The Connecticut Supreme Court in *Renaissance Mgmt. Co. v. Conn. Hous. Fin. Auth.*, 281 Conn. 227 (2007), recently set forth the applicable common-law principles for a bad faith claim:

> [i]t is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.

*Id*. at 240 (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432-33 (2004)). To establish a valid bad faith claim, a party must prove: (1) two parties entered into a contract from which the plaintiff reasonably expected a benefit, (2) the defendant's actions denied or obstructed the plaintiff's expected benefit of the bargain, and (3) the injurious actions

---

a.  Awarding damages for the insurers' denial of coverage in breach of the policies;

b.  Ordering the insurers to defend and indemnify the insureds for the allegations of Conor McEntee arising out of the May 5, 2002 accident;

c.  Awarding attorney's fees, interest and costs; and

d.  Such other and further relief as the Court deems just and proper.

Am. Counterclaims at p. 6. The only damage claim that could arguably relate to the Kings' CUTPA/CUIPA count is their claim for attorney's fees. Again, even if their complaint included a viable CUTPA/CUIPA claim, the Kings have failed to plead that any violation proximately caused them to incur attorney's fees.

were the product of the defendant's bad faith. *Owen v. Georgia-Pacific Corp.*, 389 F. Supp. 2d 382, 393 (D. Conn. 2005). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." *De La Concha of Hartford, Inc.*, 269 Conn. at 433 (quoting *Habetz v. Condon*, 224 Conn. 231, 237 (1992)).

In their amended counterclaims, the Kings allege the following in support of their bad faith claim:

> 22. The Kings restate paragraphs 1 through 21 of their counterclaims as if fully set forth herein.

> 23. Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

> 24. The implied covenant of good faith and fair dealing is applicable to contracts of insurance.

> 25. The insurers acted in bad faith and with a dishonest and improper motive in failing to conduct a reasonable investigation regarding the facts and circumstances of the May 5, 2002 accident.

> 26. The insurers acted in bad faith and with a dishonest and improper motive in failing to defend and indemnify the insureds against the claims asserted by Conor McEntee arising from the May 5, 2002 accident.

> 27. Based upon the actions referenced herein, the insurers have breached the implied covenant of good faith and fair dealing applicable to the referenced insurance policies.

> 28. As a direct and proximate result of the insurers' breach, the insureds have suffered damages, including the costs and attorney's fees incurred in the defense of this matter.

Am. Counterclaims at ¶¶ 22-28.  The Kings had previously alleged that:

> 6.  The insurers' position regarding coverage is based, in substantial part, on its mistaken belief that the alleged injury to Conor McEntee occurred at a location other than a premises used in connection with the residence premises, as the terms "insured location" and "residence premises" are defined within the referenced insurance policies.

> 7.  The location at which the alleged injury to Conor McEntee took place is a private way maintained by The Deer Park Association, Inc. for the exclusive use and benefit of all property owners within The Deer Park Association, including the insureds.  As such, it was a location used by the insureds in connection with their residence.

> 8.  A reasonable investigation into the facts and circumstances relating to the May 5, 2002 accident would have revealed the facts stated in ¶ 7 above.

> 9.  The insurers failed to conduct a reasonable investigation into the May 5, 2002 accident, and denied coverage to – and refused to defend – the insureds on the basis of an unreasonable, inept and incomplete investigation.

> 10.  On information and belief, the insurers' refusal to defend or cover claims without conducting a reasonable investigation based upon all available information has occurred with such frequency as to indicate a general business practice.

Am. Counterclaims at ¶¶ 6-10.  The Kings have thus pled essentially the same theory under their bad faith claim as they did under their CUTPA/CUIPA claim, specifically, that Royal's decision to deny coverage was improper and made in bad faith.  As such, the Kings' bad faith claim fails for essentially the same reasons that their CUTPA/CUIPA claim fails.  I will not reiterate those reasons in great detail here.  Briefly, in the absence of an allegation that Royal's interpretation of the insurance contracts was unreasonable, the Kings fail to plead that they were deprived of any other benefit of their bargain with Royal.  Moreover, even if they had pled a valid procedural bad faith claim, the Kings have failed to plead that any violation proximately caused them harm.

The Kings again rely heavily on *United Technologies Corp.* this time for the proposition

that the "tort of bad faith in the property insurance context" is not limited to "claims of unreasonable or wrongful denial of claims. The insurer's duty of good faith is not triggered only when coverage is unquestioned." 118 F. Supp. 2d at 188. The *United Technologies* court quoted *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508 (1992), for the proposition that:

> The core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured. We grant that security from financial loss is a primary goal motivating the purchase of insurance. That security flows from the express covenants of the insurance agreement. However, the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing.

*Id*. at 188. Again, I need not comment on that holding today because, even if a plaintiff may plead a valid bad faith claim in the absence of coverage under the policy, the Kings have not pled one.

C.    The Kings' Negligence Claim Against NEBC

To prove a negligence claim under Connecticut law, a plaintiff must establish that the defendant owed him a duty, that it breached the duty, and, as a proximate result, that the plaintiff suffered some compensable harm. *Royal I*, 512 F. Supp. 2d at 132.

In their third-party complaint against NEBC, the Kings allege the following:

24.  The Kings restate paragraphs 1 through 23 as if fully set forth herein.

25.  Third-party defendant NEBC has served as the Kings [sic] insurance broker for years, writing their home, auto and umbrella coverage.

26.  The $5 million Umbrella Policy issued by Royal should have been written as a follow form policy to mirror the terms of the Homeowner's Policy.

27.  The Broker's failure to write the Umbrella Policy – which contains an

-17-

exclusion for ATV's not present in the Homeowner's Policy – to mirror the terms of the Homeowner's Policy fell below the standard of care of a reasonable and prudent broker in like circumstances.

28. As a direct and proximate result, the Kings have suffered damages. If the Court determines that the May 5, 2002 ATV accident is covered under the Homeowner's Policy, then Royal's Umbrella Policy should be reformed to delete the ATV exclusion and any other term inconsistent with the Homeowner's Policy that would preclude coverage. In the alternative, the Broker is liable for the excess coverage that should have been provided by the Umbrella Policy and the National Policy.

Third Party Compl. at ¶¶ 24-28.

NEBC moved for summary judgment on the Kings' negligence claim. I granted summary judgment to NEBC, holding that:

[t]he Kings' negligence claim . . . hinges on its previous argument that the homeowner's policy covers McEntee's claimed damages. As I previously held, however, coverage for McEntee's claims did not exist under the Kings' homeowner's policy. Thus, the Kings' umbrella policy would not have covered McEntee's claimed damages even if it had followed form to the Kings' homeowner's policy. As such, even assuming the truth of the Kings' allegations regarding NEBC's acts, the Kings cannot prove the acts caused them any damages. The Kings' negligence claim thus fails.

*Royal I*, 512 F. Supp. 2d at 133.

In the instant motion, the Kings acknowledge that I held at summary judgment that "NEBC was entitled to summary judgment insofar as the Kings' claimed that the broker was negligent in procuring an umbrella and excess insurance policy that followed form with the underlying coverage in the homeowner's policy." Motion to Reconsider at ¶ 18. The Kings argue, however, that the failure to procure an umbrella policy that followed form "was not the only possible negligent act committed by the Kings insurance broker," and that "given the unilateral decision by Royal to modify the scope of the coverage provided by the umbrella policy,

NEBC was in a position to advise the Kings regarding the impact of this change on the extent of their coverage." *Id*. In particular, the Kings assert that "[d]espite NEBC's knowledge of the policy change, the broker did not alter [sic] the Kings or expressly solicit information regarding the Kings possession or use of an all-terrain vehicle." *Id*.

Briefing, however, does not substitute for pleadings. Regardless of whether Royal committed other negligent acts, the Kings pled only that NEBC was negligent because it failed to assist the Kings to procure an umbrella policy that followed form to the homeowner's policy, a policy under which there is no coverage. Because I squarely rejected that claim at summary judgment, the Kings' negligence claim, as pleaded in their complaint, fails.

      D.     <u>Motion to Amend the Complaint</u>

The Kings have moved, in the alternative, to amend their complaint to add new facts and legal theories to support their rejected claims. Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading . . . by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). "[I]n keeping with the purpose of Rule 15(a), which is to facilitate a determination of the action on its merits, a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time. . . . [A]n amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a

result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party. . . ."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1487, at 659, 662 (2d ed. 1990).  "A district court has broad discretion to decide whether to grant leave to amend." *Joblove v. Barr Labs., Inc. (In re Tamoxifen Citrate Antitrust Litig.)*, 466 F.3d 187, 220 (2d Cir. 2006).

The Kings have not submitted a proposed amended third-party complaint or proposed second amended counterclaims, so I cannot comment on their potential merit.  It is clear from their briefing, however, that the Kings seek leave to allege an entirely new factual and legal basis for their CUTPA/CUIPA and bad faith claims against Royal, and their negligence claim against NEBC.

Royal filed its complaint on December 17, 2003.  The Kings originally filed their counterclaims on February 17, 2004 and later amended those counterclaims.  The Kings filed their third-party complaint on October 22, 2004.  Through the course of the litigation, which has spanned over four years, nine dispositive motions and five discovery motions, the Kings had ample opportunity to amend their complaint to add the new theories of liability, and did, in fact, amend their counterclaims once.  Only now, after all of their remaining claims were actually or effectively disposed of at summary judgment, do the Kings seek to amend their complaint to add alternative theories of liability.  The new claims would require additional discovery and delay the adjudication of the issues, are likely time-barred, and would require Royal and NEBC to defend an entirely new theory of a case already decided on the merits.  To grant their motion and permit the Kings to amend their complaint after all of their claims have failed on the merits would be fundamentally unfair and prejudicial to Royal and to NEBC.  I thus decline to exercise my

discretion to allow the Kings to amend their pleadings. *See* 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487, at 623 (2d ed. 1990) ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation," a court may refuse to exercise its discretion to allow amendment); *see also Missouri Housing Dev. Com. v. Brice*, 919 F.2d 1306, 1316 (8th Cir. 1990) (denying leave to amend after plaintiff lost at summary judgment and attempted to change the theory of the case).

## IV.   Conclusion

The Kings' CUTPA/CUIPA and bad faith claims, as pled, are inextricably tied to, and dependant upon, their assertion that Royal's decision to deny coverage was unreasonable.  The summary judgment ruling rejected that allegation as a matter of law.  Because the Kings have pled no other basis for relief under their CUTPA/CUIPA or bad faith claims, and because they failed to allege that they were proximately harmed by any violation, those claims fail.

In addition, the recent ruling expressly granted summary judgment on the Kings' negligence claim against NEBC, as pleaded, and I decline to exercise my discretion to allow the Kings to amend their pleadings to add new legal theories after all their claims have been dismissed on the merits.

The Kings' Motion to Reconsider **(doc. # 190)** is thus DENIED.  Judgment shall enter in favor of Royal, NEBC, and National and against the Kings.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 7th day of January 2008.

/s/ Stefan R. Underhill
        Stefan R. Underhill
        United States District Judge